■ In the Matter of TIMOTHY D. BURNHAM, Respondent, v THERESA BASTA, Appellant-Respondent. DAVID W. TRULAND, as Law Guardian, Appellant. [659 NYS2d 945] —Yesawich Jr., J. Appeal from an order of the Family Court of Rensselaer County (Hummel, J.), entered February 8, 1996, which, in a proceeding pursuant to Family Court Act article 6, granted, *inter alia,* the parties joint legal custody of their child.

When the parties ceased cohabiting in October 1993, respondent became the primary caretaker of their son, Thorn, who was then approximately 10 months old. The child thereafter spent weekends with petitioner, and they had some midweek visits as well. This informal arrangement continued until July 1995 when respondent married and moved, with Thorn, to northern New Jersey without informing petitioner. When petitioner discovered that respondent did not intend to return to the Rensselaer County area, he petitioned for custody of Thorn or, alternatively, court-ordered visitation; purportedly, his main reason for doing so was to ensure that he would be able to continue to be involved in his son's life in a meaningful way. Respondent cross-petitioned for similar relief.

While the proceeding was pending, Thorn continued to visit with his father on weekends, being picked up and dropped off at a highway rest area approximately half-way between the parties' homes. Respondent and her husband testified that they were satisfied with this arrangement; petitioner was not because the long travel time decreased the amount of meaningful time he was able to spend with Thorn. Petitioner also

expressed concern over the possibility that Thorn was being exposed to an unhealthy family situation, due to the allegedly controlling and violent nature of respondent's husband.

After a hearing, Family Court awarded the parties joint legal custody but, analyzing the situation in accordance with the three-tiered approach that was, until recently, the judicially accepted means of balancing the competing interests involved in a relocation case (*see, Matter of Tropea v Tropea*, 87 NY2d 727, 736-737), found that respondent had failed to make the necessary showing of "exceptional circumstances" to justify her relocation to New Jersey. Consequently, respondent was awarded primary physical custody (with petitioner to have visitation one evening per week, on alternate weekends, and for a "reasonable" time on holidays and vacations), but only if she were to move back to New York within 30 days; otherwise, petitioner was to have physical custody with respondent to have appropriate visitation. Respondent appeals.*

We are not inclined to disturb Family Court's award of joint custody. It does not appear from the record that the parties' relationship is so acrimonious that they are incapable of putting aside their differences and working together to the extent necessary to engage in joint decisionmaking with respect to Thorn's upbringing. Indeed, their demonstrated ability to reach agreements as to the logistics of long-distance visitation and to implement those decisions supports the contrary conclusion (*see, Matter of Monahan v Monahan*, 178 AD2d 829, 830).

We agree with respondent that the best interest of the child should be considered when resolving the issues posed herein. It is now settled that the absence of "exceptional circumstances" does not, alone, mandate that a custodial parent's relocation request be denied; rather, all relevant facts and circumstances must be weighed, "with predominant emphasis being placed on what outcome is most likely to serve the best interests of the child" (*Matter of Tropea v Tropea, supra*, at 739). Although Family Court did not reach that issue, the record is sufficiently developed to enable us to resolve the matter (*see, Matter of Mendoza v Adamson*, 238 AD2d 737).

Consideration of the relevant evidence leads us to conclude that respondent has not met her burden of demonstrating, by a preponderance of the evidence, that the relocation will serve Thorn's best interest (*see, Matter of Tropea v Tropea, supra*, at 741). In so concluding, we have examined not only the reasons

---

* The Law Guardian has informed this Court by letter that he is no longer pursuing the appeal that he took from Family Court's order.

advanced by respondent for the move—including the positive effect she represents it will have on her financial situation and lifestyle—and the negative impact it will have on Thorn's relationship with petitioner, but also the quality of the child's relationships with both parents, the effect of the move on Thorn's interactions with his extended family, the feasibility and desirability of awarding custody to petitioner (should respondent insist on moving), and the possibility of a "parallel move" by petitioner (*see, id.,* at 740).

Respondent's reasons for relocating are essentially economic. She maintains that the move will improve her living situation by, *inter alia*, allowing her husband to earn enough money to support the family so that she could stay home and devote her energies to raising Thorn and his half-sibling (respondent was pregnant at the time of trial), without depending on public assistance. While this would undoubtedly inure to Thorn's benefit, we are not entirely convinced that respondent can realize these benefits only by relocating outside of the Capital District area. Although she can live rent-free in New Jersey in a home owned by her in-laws, and her husband testified that he earns a good living from his own painting business in that State, the record evidence does not rule out his ability to establish a similar business in New York and, by so doing, to provide suitable living accomodations for the family here.

Moreover, the detrimental effects of the move are, as Family Court found, not insubstantial. Should respondent be allowed to stay in New Jersey, Thorn would lose the opportunity to visit with petitioner and his many relatives who live in the area—including cousins his own age—during the week. In addition, to continue to enjoy regular weekend visitation, Thorn would have to endure a two to three-hour long car ride each way. His actual visitation time, which would be shortened accordingly, would have to be shared among petitioner, both sets of grandparents and the child's other relatives.

Nor can we entirely discount petitioner's allegations of domestic violence between respondent and her husband. Respondent's denials notwithstanding, the substance and detail of petitioner's testimony, along with the observations of the court-appointed evaluator, suggest that his concerns may not be entirely unfounded.

Should respondent insist on moving, petitioner has indicated a desire and ability to take custody of Thorn and, while not the ideal solution (since the child would undoubtedly benefit most from continued, frequent contact with both of his parents), it would enable the child to maintain his relationships with his

grandparents and other relatives. Petitioner is undeniably an involved and committed parent who loves his son and has played an active role in his upbringing whenever possible. And, in view of petitioner's living situation and his employment at a local foundry, it appears unlikely that he would be able to move to be closer to his son.

In sum, respondent has not proven that the benefits to be gained by relocation outweigh its negative effects such that Thorn's best interest would be served thereby. Accordingly, Family Court did not err in denying respondent's relocation request and directing her to return to New York or, alternatively, awarding custody to petitioner.

Mikoll, J. P., Crew III, Casey and Spain, JJ., concur. Ordered that the order is affirmed, without costs.