■ In the Matter of BRETT BURR, SR., Respondent, v REBECCA EMMETT, Appellant. [670 NYS2d 637] —Yesawich Jr., J. Appeal from an order of the Family Court of Otsego County (Pines, J.), entered September 8, 1997, which granted petitioner's application, in a proceeding pursuant to Family Court Act article 6, for modification of a prior custody order. ·

The parties' only child, Jessie, born in 1993, is the focus of this custody proceeding. In February 1996, they agreed to joint custody of Jessie, with respondent having primary physical custody and petitioner having visitation. In addition, they stipulated that their son's residence would not be relocated outside Otsego County or Delaware County without leave of court. An order was entered embodying these terms and the arrangement was evidently satisfactory to both parties until March 1997, when respondent informed petitioner that she planned to move to California to remarry and pursue a career as a lyricist, taking Jessie and his nine-year-old half-sister, Korinna.

Petitioner then commenced this proceeding in which he seeks sole custody of Jessie, contending that the relocation would be contrary to the child's best interest. After a hearing, Family Court granted the petition and respondent appeals.*

Although respondent urges it, we are not persuaded that Family Court erred in deciding that her relocation to California constituted a change of circumstances sufficient to warrant reexamination of the existing custody arrangement, or in concluding that, given the entirety of the relevant circumstances, Jessie's interest will be best served by transferring custody to petitioner at this juncture. Where, as here, a custodial parent seeks to change his or her residence in a manner that would detrimentally affect the other parent's ability to enjoy "frequent and regular contact with the child" (*Matter of Yelverton v Stokes*, 247 AD2d 719, 720), the relocating party bears the burden of demonstrating that the proposed move is nevertheless in the child's best interest (*see*, *Matter of Tropea v Tropea*, 87 NY2d 727, 741). Among the factors to be considered by the court in deciding this issue are: "each parent's reasons for seeking or opposing the move, the quality of the relationships between the child and the * * * parents, the impact of

---

* On October 2, 1997, respondent moved by order to show cause to stay execution of the order pending resolution of this appeal; that motion was denied. Although the papers submitted in connection with respondent's stay application have been reproduced in the record, we have not considered those materials for they introduce new facts that were not before Family Court when it rendered the decision at issue herein (*see*, *Block v Magee*, 146 AD2d 730, 732).

the move on the quantity and quality of the child's future contact with the noncustodial parent, the degree to which the custodial parent's and child's life may be enhanced economically, emotionally and educationally by the move, and the feasibility of preserving the relationship between the noncustodial parent and child through suitable visitation arrangements" (*id.*, at 740-741).

In its decision, Family Court noted the extensive family ties Jessie has in the Oneonta area, including a half-brother, both sets of grandparents and cousins with whom he visits and plays regularly; the stability of the parties' employment and living situations; and the impact that moving Jessie to California would have on the close relationship that he has enjoyed with petitioner. In sum, the court found that while respondent's plans to become a lyricist and writer in California (a career she testified she would not abandon, even if she were not permitted to take Jessie with her) are well-intentioned, they remain speculative at best—for she has yet to earn any income from these activities—and do not justify uprooting Jessie from familiar surroundings and loving relatives, and disrupting his strong bond with petitioner. After reviewing the record as a whole, we cannot say that these findings and conclusions are without a "sound and substantial basis" therein (*Matter of Blair v Blair*, 243 AD2d 758, 759, *lv denied* 91 NY2d 804; *see, Matter of Burnham v Basta*, 241 AD2d 628, 629-630, *lv denied* 90 NY2d 812).

Respondent places great emphasis on Family Court's failure to specifically address her allegations that petitioner and his other son (Jessie's half-brother) acted violently toward her in the past, contending that the court erred in not finding that these incidents militate against allowing petitioner to become Jessie's primary caretaker. While it would perhaps have been preferable for the court to have made an explicit finding regarding whether it credited this portion of respondent's testimony, given the lack of corroboration of respondent's charges, and the sharply conflicting testimony elicited from petitioner, the court's failure to comment thereon indicates only that it found (not unreasonably, in our view) that the allegations had not been proven by a preponderance of the evidence, and consequently were not a factor in its determination.

Nor are we convinced that the Law Guardian did not adequately represent Jessie's interest (*see, Matter of Pratt v Wood*, 210 AD2d 741, 743; *cf., Matter of Jamie TT.*, 191 AD2d 132, 137-138), as respondent maintains. Although he declined to make a recommendation as to which of the parties should

now have custody of Jessie, it is significant that the Law Guardian actively participated in the hearing, calling and examining a psychiatric social worker, cross-examining other witnesses and delivering a brief summation, in which he reiterated the expert's opinion that Jessie would be well cared for by either party, and aptly noted that it was Family Court's province to make the final decision on the basis of the factors set forth by the Court of Appeals in *Matter of Tropea v Tropea* (87 NY2d 727, *supra; see, Matter of Miller v Miller*, 220 AD2d 133, 137).

Mikoll, J. P., Crew III, Peters and Carpinello, JJ., concur. Ordered that the order is affirmed, without costs.