Matter of Mc Leod v O'Brien (2004 NY Slip Op 51643(U))

[*1]

Matter of Mc Leod v O'Brien

2004 NY Slip Op 51643(U)

Decided on December 1, 2004

Family Court, Warren County

Breen, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on December 1, 2004

Family Court, Warren County
In the Matter of a Proceeding for a Modification of Custody & Visitation under the Family Court Act PATRICIA MC LEOD, Petitioner,
against
JOHN O'BRIEN, Respondent
V-00432/03/04C

Michael Stern, Esq. for Petitioner
Mary K. Moule, Esq., for Respondent.
Kara M. Dopman, Esq., Law Guardian

Timothy Breen, J.
By Judgment of Divorce the above-named parties were divorced by Judgment dated April 26, 2000 and entered on May 5, 2000 in the Warren County Clerk's Office. That Judgment incorporated the terms of a certain Separation Agreement between the parties dated January 29, 2000.
Petitioner Mother thereafter filed a petition for modification of the terms of the Divorce Judgment in this Court on March 27, 2003 which resulted in a mediated agreement between the parties and a Mediated Order entered on May 8, 2003.
On April 27, 2004, the Petitioner Mother again filed an application with this Court seeking to modify the existing custodial arrangement between the parties. She specifically asks this Court to grant her the right to relocate to Portland, Oregon with the children of the parties and to award the Respondent a fixed visitation schedule consisting of substantial holiday visitation and six consecutive weeks in the summer as well as other visitation times with the children.
Petitioner argues that she is engaged to a Portland, Oregon attorney, Michael Esler, and plans to marry this summer. Petitioner currently works for Mr. Esler's law firm out of Portland, Oregon and can advance her career if she relocates to Portland. Petitioner claims that her increased earning potential will not require any additional hours away from her home. She states that permitting relocation will not affect the Respondent's visitation and access to the children since the proposed visitation schedule provides Respondent with approximately the same amount of time as per the existing Visitation Order. In addition, she notes that the Respondent engages in extensive elective travel which would enable him to incorporate visits with the children. She believes that the children's living conditions as well as both the economic and social opportunities for the children would be enhanced by permitting such relocation.
 The home where the children will be residing is 5500 square feet in area and has 7 bedrooms and is situated on nearly three acres of land. The children will have a membership in a local athletic club and will have access to the many cultural and outdoor sites available in the greater Portland [*2]area. Petitioner further claims that the school system where the children will be enrolled is excellent, due in part to its larger enrollment and offers more extracurricular activities for the children.
The blended family that the children will join consists of Mr. Esler's daughter and son, Megan and Brian age 19 and 17 who spend 100% of their time with their father and 12-year-old Joe who spends 70% of his time with his father.
The Respondent Father is opposed to Petitioner's application on the grounds that such a move will seriously impact on his current close relationship with his children. The matter remained in a contested posture with a trial commencing on August 24, 2004, and continuing on November 16 and November 19, 2004.
APPLICABLE LAW
As set forth in the landmark case of In the Matter of Tropea V. Tropea, 87 NY2d 727 (1996), the New York Court of Appeals has held that each relocation case must be decided on its own merits with predominant emphasis on what outcome is most likely to preserve the child's best interests. Factors for courts to consider include each parent's reason for seeking or opposing the move; the quality of the relationship between the child and each parent; the impact of the move on the quality and quantity of future contact with the non custodial parent; the degree to which the custodial parent and the child's lives may be enhanced economically and educationally by the move; the feasibility of preserving the relationship between the remaining parent and the child through suitable alternative visitation arrangements.
The parent seeking to relocate has the burden of proof to establish that the move is in the child's best interest. The relocating parent must show planning for the child's schooling in the new area and must show proof of the increased economic advantages. Proof must be offered to the Court that the child's life will be enhanced by the move. The Court is required to consider the negative impact on the relationship of the child and the non custodial parent, particularly in situations where the child and non custodial parent have a close relationship with frequent contact. The continued presence of an extended family in the home area is another factor to be considered. In assessing the negative impact on the non custodial parent, the Court must consider the distance of the move as well as the length and cost of travel time.
 Focusing specifically on Appellate Division, Third Department cases, the Court consistently reiterates that the burden of proof is on the parent seeking to relocate. The parent must show that the relocation serves the child's best interests. Brown v McGuire, 245 AD2d 895.
There are a number of cases in which relocation has been denied by the Appellate Division, Third Department. In Mendoza v. Adamson, 238 AD2d 737, relocation was denied by the Court since the non custodial father was very interested in the child, had an extended family which was intimately involved with the child, and offered a stable and beneficial environment for the child. The custodial mother who wished to relocate failed to offer testimony regarding child care and [*3]educational opportunities if the move were permitted. The non custodial father testified that the move would likely destroy his relationship with the child because of the limited financial resources of both parents.
In Burr v. Emmett, 249 AD2d 614, the Court denied relocation on the grounds that marriage and pursuit of a career were insufficient to defeat the negative impact of the prospective move on the child's close relationship with the father and the presence of extended family in New York State.
In Yelverton v. Stokes, 247 AD2d 719, relocation of the mother was not permitted, although the mother as custodial parent married a man with a lucrative job in a distant state with no similar possibilities in New York State. The non custodial father had alternating weekends and two days of weekday visitation with the child and a close relationship with the child. The custodial Mother failed to plan for the child's schooling in California and her new husband was inexperienced with children.
FINDINGS OF FACT
The Petitioner called the Respondent Father; the Petitioner's fiancé, Michael Esler; and Petitioner Mother as witnesses in support of her application to the Court.
Respondent called Jean O'Brien, Paternal Grandmother; John O'Brien Sr., Paternal Grandfather; and Respondent Father as witnesses in opposition to Petitioner's application for relocation.
The Court conducted a Lincoln Hearing with the subject children and Law Guardian on November 18, 2004. The Court found the children to be quite remarkable in that they presented themselves as mature, polite and intelligent children reflecting the good parenting and values of both their parents. They clearly expressed their love for both their parents, their extended family and their specific desires as to whether they should remain in the community or move to Portland Oregon.
The parties herein were married in 1990 and divorced in 2000. They are both college graduates. The Mother presently works in a somewhat unique fashion as the chief bookkeeper for her fiance's Portland law firm from her home in Warrensburg, New York. With the use of electronic communications she is able to perform her job for the firm with additional trips to Portland two times a year and for a monthly summer visit. According to the testimony of Mr. Esler and the Petitioner, they are hopeful that if her relocation is approved, her position with the firm can be enhanced so that she could delegate some of her bookkeeping duties and take on more complicated tasks as a paralegal performing forensic accounting work which is now "out sourced" by the law firm. If she is able to do such work, she estimates a substantial increase from her current salaried position of $23 per hour in the amount of $7,000 to $8,000 per year.

The Father is a licensed acupuncturist maintaining his own private practice and has a flexible working schedule. He recently remarried and he and his wife, who is a school teacher, are [*4]expecting a child in February. The Father presently parents his children each and every Tuesday and Thursday from after school to 7:30p.m. or all day if there is no school on those days and also alternate weekends from Friday evening through Sunday evening. The parties have made additional arrangements so that the children are with their Father when the Mother is required to be in Oregon for her job. The parties share summer vacation time with the children and have a history of cooperation and flexibility in effecting pick ups and drop offs of the children and in effectuating the existing order in the children's best interest.
Both parents grew up in the same community of Waterford, New York a small community in the Albany area approximately 50 miles away. The children's maternal Grandmother and Paternal Grandparents continue to reside in that community and the Father regularly brings the children to both grandparents' homes while the children are in his care. The parties also have extended family in the Capital District and the children have regularly shared holiday gatherings, family outings, trips, birthdays and celebrations with their extended family of Aunts, Uncles and cousins.
The Father has been consistent and regular in his parenting time with the children. He often attends their extracurricular events such as school teacher conferences, concerts and athletic events. He frequently engages the children in activities while they are in his care including camping trips and family trips with his own family members.
LAW GUARDIAN'S REPORT
The court appointed Law Guardian, Kara M. Dopman, Esq., stated at the conclusion of the trial that all the children have expressed a wish not to move because they would miss their Father; their extended family; and all their friends and activities. The Law Guardian related that these are marvelous, articulate, mature, and appropriately behaved children that are a credit to both parents. They experience frequent, constant, and intimate relationships with extended family life which would not happen if relocation were permitted. Permitting relocation would result in the breakup of the nuclear family. The Petitioner Mother has not shown proper insight into the impact that relocation would have on the children. The financial benefits and improved financial resources are not sufficient to outweigh the negative impact on the Respondent Father's frequent contact with the children. There is not a climate of hostility between the parents to which the children have been exposed and there is no need for sole custody to be granted to one parent.
FORENSIC EVALUATION
On November 19, 2004, the parties stipulated that the Report of Dr. James Merrigan would be marked and received into evidence as Court Exhibit A, thereby eliminating the need to call Dr. Merrigan as a witness.
Per the Order of this Court, pursuant to FCA 251, dated June 7, 2004, James P. Merrigan, PhD, performed a custody evaluation on the subject parties and children. Dr. Merrigan concluded that all three O'Brien children present as normally adjusted, mature and intelligent youngsters. All [*5]three children express a wish to maintain the custodial relationship with their mother and a close visiting relationship with their father. None of the children wishes to move to Oregon, and state clearly that they would miss their father, their school, their friends and their extended family in the area. The children are stressed by the instant litigation because of their loyalty and close attachment to both of their parents. Dr. Merrigan stated that it is of some concern that the Petitioner Mother is either unaware of her children's wishes, or, is rationalizing the material benefits of moving as being more important than the emotional needs of the children.
Dr. Merrigan concluded that all three of the subject children would be adversely emotionally affected if their relationship with either parent was diminished by reducing the amount of contact that they are able to have with each parent
CONCLUSIONS OF LAW The family before this Court reflects two intelligent, able and caring divorced parents who clearly have a deep and abiding love for their three children and a strong desire in seeing them grow up to become successful adults. While the parents are cool to each other and communicate with some difficulty, they have, to their mutual credit, not exposed their children to overt hostility or inappropriate or damaging conduct and have both worked to assure access to the children by both parents since their divorce and separation. The fact that their children appear to be well adjusted and thriving in their school and community attests to this joint effort.
The Mother's application to move the children nearly 3000 miles from their current home cannot be said to be made in bad faith, as she now has the opportunity to remarry, to afford herself more financial stability with a husband who is financially successful and who offers her an opportunity to expand her professional career and earnings within his own firm. She has offered the Father liberal and extended parenting time with the children during vacation periods and even offered to assume the bulk of transportation costs.
On the other hand the Father's opposition to the relocation cannot be said to be in bad faith either. He expresses a deep and abiding love for his children, a desire to have the same frequent and regular contact with his children as he has exercised since the separation of the parties and does not want to have to parent his children long distance, since they will be living on the other side of the country.
While the Mother's anticipation of increased earnings if she were able to work daily in the Portland office is understandable, there is no showing that she could not increase her earnings or improve her position within the immediate area. Nor is there any statistical or empherical data to show that the children's educations would be significantly be enhanced by the change of school districts. While their present school is clearly more rural than the Portland school district, there is no showing that the children cannot be adequately educated in their present community. While the Portland Oregon area, as a large metropolitan complex, does offer more diverse and interesting activities, it cannot be said that the children's present access to cultural or outdoor activities is not [*6]adequate and, indeed, one could argue there are advantages to the children growing up in a smaller community.
What is most important in this case is the quality of the relationship of the children to their parents and the impact on the children of a relocation of their primary custodial home so far from their current home. The Court was impressed, as noted, with the intelligence and commitment of both of these parents. The children clearly enjoy and benefit from having regular and frequent contact with both parents. Their lives are enriched by the love provided by the extended families of both parents and their regular participation in the life of the extended family which clearly would not occur if they were to move 3000 miles away. As expressed quite clearly by the Grandparents who testified at trial, it would be impossible to stay as involved and close to their grandchildren if relocation of the children were permitted.
There is little question that not only the quality but also the quantity of the Father's relationship with the children would be impaired and unalterably changed if the children were allowed to relocate to the other side of the country. He has been a "hands on Dad," actively and regularly showing a commitment to be involved with his children's day to day lives. To be away from the children for extended periods of time would be detrimental to the relationship of the Father with the children and, as stated by the children themselves, would cause them concern as well since they are clearly used to and reliant on the regular contact with him.
In consideration of the foregoing, noting the strong recommendation of the children's attorney and the comments of the forensic evaluator, the Court is compelled to find that the Mother has not met her burden of proof to warrant a relocation of the children to Portland, Oregon as such a move would be adverse to and not in accord with the best interests of the children. Petitioner's application is hereby denied in its entirety with prejudice.
The within constitutes the decision and order of the Court.
Signed on this day of December 2004, at Warren County Family Court, Warren County Municipal Center, Lake George, New York .
ENTERED: _____________________________________
 HON. J. TIMOTHY BREEN JFC

PURSUANT TO FCA 1113, AN APPEAL FROM THIS ORDER MUST BE TAKEN WITHIN 30 DAYS OF RECEIPT OF THE ORDER BY APPELLANT IN COURT, 35 DAYS FROM THE DATE OF MAILING BY THE CLERK OF THE COURT, OR 30 DAYS AFTER SERVICE BY A PARTY OR THE LAW GUARDIAN UPON THE APPELLANT, WHICHEVER IS EARLIEST. [*7]
cc: Michael Stern, Esq. for Petitioner
 Mary K. Moule, Esq., for Respondent.
 Kara M. Dopman, Esq., Law Guardian