■ In the Matter of FRANK M. HARDER, Respondent, v LISA YANDOH, Appellant. [644 NYS2d 83] —Peters, J.

Pursuant to a stipulation of settlement, an order was entered by Family Court in March 1992 providing for joint custody of the parties' two children, Frank, Jr. (born Dec. 1986) and Brett (born Mar. 1988), with primary placement to petitioner. Respondent was afforded extensive visitation which included, but was not limited to, the first three weekends of each month

beginning on Friday at 6:00 P.M. and ending on Monday at 8:30 A.M., each Wednesday for approximately four hours, and half of all holidays and school vacations. The order further provided that respondent would be afforded six weeks of visitation during the summer, scheduled in three-week blocks interrupted by a one-week break, and that "neither parent may make a decision or take any actions that result in a major change in a child's life unless the other parent agrees, or the Court allows it * * * [which shall be interpreted to] mean [ ] changes in residence, religion, health care, education and recreation". The order also provided, *inter alia*, that notice be given of any change in address, that respondent continue mental health counseling until released by her counselor and that petitioner undergo various tests and pursue whatever mental health counseling is suggested by his counselor.

In August 1994, petitioner sought sole custody of the children and an order holding respondent in contempt for her refusal to return the children after the scheduled summer visitation. Respondent cross-petitioned for custody and an order holding petitioner in contempt due to his unilateral decision to move from the Village of Potsdam, St. Lawrence County, approximately 15 miles from petitioner, to the Village of Hammond, St. Lawrence County, approximately 65 miles from petitioner.[1] Pursuant to court order,[2] respondent returned the children and subsequently filed a petition seeking to have petitioner provide all transportation for the scheduled visitation, pending a hearing by Family Court. An order resulted requiring petitioner to transport the children but nonetheless suspending, on a temporary basis, midweek visitation and modifying the return of the children on Sunday evenings to 7:00 P.M.

At trial, Family Court declined to hold either party in contempt and instead focused upon whether petitioner would be granted permission to relocate. After extensive testimony from the parties, petitioner's spouse, Frank, Jr.'s teacher and the children through a *Lincoln* hearing (*see, Matter of Lincoln v Lincoln*, 24 NY2d 270), the court condoned the move for both medical and financial reasons and concluded that the move was in the best interests of the children. Moreover, due to the tumultuous relationship between these parties, Family Court

1. We note that by letter dated July 1994, petitioner informed respondent that he was moving to Hammond on August 1, 1994. Respondent immediately wrote petitioner in protest, citing the provisions of the prior order of Family Court dated March 5, 1992.

2. Such order is not part of the record on appeal.

granted sole custody to petitioner.[3] The court also continued the prior order granting three weekends a month to respondent but ordered the return on Sundays to be at 6:00 P.M., visitation for holidays and summer vacation remained unchanged and the parties were ordered to split transportation. The court further noted that if the parties should live within one-half hour of one another, midweek visitation would recommence.[4] Respondent appeals.

While this appeal was pending, the Court of Appeals squarely addressed the standard to be applied in relocation cases (see, Matter of Tropea v Tropea, 87 NY2d 727) and wholly abandoned the well-entrenched three-tiered analysis applied by Family Court (see, supra, at 736-739). We are now guided by the principle that "each relocation request must be considered on its own merits with due consideration of all the relevant facts and circumstances * * * with predominant emphasis being placed on what outcome is most likely to serve the best interests of the child" (supra, at 739). As no one factor or legal presumption is dispositive or serves to truncate a court's inquiry, we look to circumstances indicating, inter alia, the impact of the relocation on the current and future relationship between the child and the noncustodial parent, the reason for such move (no longer limited by economic necessity or a specific health-related concern), whether a revision of the visitation schedule could promote a meaningful parent-child relationship, the lifestyle that the children will have if the proposed move was permitted and the negative impact, if any, which will result due to continued hostility between the parents (see, supra, at 739-740). Courts are to further "consider the possibility and feasibility of a parallel move by an involved and committed noncustodial parent as an alternative to restricting a custodial parent's mobility" (supra, at 740).

The record here is sufficiently developed for us to now engage in this analysis. We find it clear that both parties and the children are deeply committed to each other but, "[l]ike Humpty Dumpty, a family, once broken by divorce, cannot be put back together in precisely the same way" (Matter of Tropea v Tropea, supra, at 740). The testimony revealed that, prior to the move, petitioner and his spouse collectively had four children

3. Although not an order of joint custody, both parties were ordered to have access to school, medical, psychological and any other types of records generated on behalf of the children.

4. Family Court further ordered petitioner not to move the residence of the children from St. Lawrence County without prior agreement by respondent or order of the court.

and were residing in student housing owned by petitioner's mother-in-law. Although petitioner is a trained teacher and had secured some part-time work, his spouse supported the family by working full time as a registered nurse in a hospital located approximately 45 minutes away from their home. Upon discovering that she was pregnant, and recognizing her problems with her prior pregnancies in the form of migraines which impeded her ability to drive, petitioner's spouse testified that she began seeking other housing (not as far distant as Hammond) in an attempt to, *inter alia*, shorten what she deemed to be a potentially difficult commute. The testimony revealed the failed attempts made by petitioner to locate appropriate housing for this soon-to-be seven-member family before they found their current residence in Hammond. Based thereupon, we cannot conclude that the evidence indicates that the move was motivated to thwart respondent's visitation.

The children's new home, somewhat larger than their prior home, is situated one block from their school and provides them with a quiet and appropriate play area. Testimony revealed that the children enjoy residing with their step-siblings and half-sibling and were doing well in their current school placement. The record further reflects petitioner's focus on promoting cohesiveness, education and stability, not only between himself and his children but also amongst this newly expanded postdivorce family. In addition, petitioner exhibits a commitment to preserving the relationship between respondent and her children through suitable visitation arrangements.

Due to the extensive visitation schedule in the summer, respondent will again be able to engage in the day-to-day aspects of the children's lives and be able to participate, as she had prior to the move, in their sports and other activities. We further find that since respondent is renting an apartment, is unemployed and lives on public assistance, she may well contemplate a move within a half-hour distance to the children's new residence to ensure the resumption of her midweek visitation. Hence, after engaging in the appropriate analysis under *Matter of Tropea v Tropea (supra)*, as we must, we conclude that the move is in the children's best interests.

As to the award of sole custody, the record reflects that while respondent has an admitted alcohol problem for which she voluntarily sought in-patient treatment immediately after the hearing, she never pursued the mental health counseling ordered in the March 1992 order and, admittedly, has difficulty in dealing with her own emotions. Further, respondent has

been less than diligent with respect to providing necessary medical treatment for the children.[5] We note also that the children have been subjected to volatile confrontations initiated by respondent. Thus, the evidence before Family Court properly supported a finding that an award of joint custody would not be appropriate.

Mikoll, J. P., Mercure, Crew III and Yesawich Jr., JJ., concur. Ordered that the order is affirmed, without costs.

---

5. There were allegations that the children returned from visitation with complaints of trouble urinating, mouth pain, ear infections and a neck problem, some of which warranted emergency room treatment. On one occasion, a return from visitation actually required a call to the Poison Control Hotline.