[708 NYS2d 385]

Helen Salichs, Respondent, v Warren James, Appellant.

First Department, May 30, 2000

## APPEARANCES OF COUNSEL

*Helen Salichs,* respondent *pro se.*

*Patricia Ann Grant* of counsel (*Michael W. Appelbaum* on the brief; *Grant & Landau,* attorneys), for appellant.

## OPINION OF THE COURT

SAXE, J.

Plaintiff mother seeks permission to relocate with the parties' child to Puerto Rico. We conclude that she has failed to satisfy her burden of proving by a preponderance of the evidence that the move would be in the child's best interests, and, accordingly, we reverse Supreme Court's grant of permission.

Pursuant to the stipulation of settlement incorporated in the parties' judgment of divorce, the mother was granted physical custody of their now six-year-old daughter, while the parties shared joint legal custody. Defendant father was given extensive visitation rights with the child, and it is undisputed that the father took advantage of all of his visitation time with the child and was very active in her life.

Although both parties were born in Puerto Rico, they have lived in New York throughout college, graduate school, and for their entire adult lives until now. Plaintiff is an attorney, admitted to practice law in New York and Connecticut. After graduating from Boston University School of Law in 1985, she worked for three years as an associate at the law firm of Gordon, Hurwitz, Butowsky, Weitzen, Shalov & Wein, primarily in the area of securities litigation. From there, she moved to the firm of Gaston and Snow, where she initially continued to work in the field of securities litigation, and ultimately began to do more corporate work. In 1990 she became "of counsel" to another firm, primarily handling litigation, but also handling some real estate and trademark infringement matters. In 1992 she began working for Anheuser-Busch as manager for corporate relations for the northeast region, a position primarily involving marketing and public relations between the company and the Hispanic community.

When the parties' child was born in 1994, plaintiff sought different employment which did not require travel. She found a position in Manhattan with Time Warner, involving marketing

and public relations between the company and the Hispanic community.

In 1997, after the parties' separation, plaintiff joined McConnell Valdes, a law firm whose main office is in Puerto Rico, as a non-equity partner at their recently opened New York office, working in their corporate department, primarily in real estate and international trademark issues relating to Cuba. However, in November 1998, the firm informed plaintiff that the New York branch of McConnell Valdes was closing. Instead of attempting to find other employment, plaintiff asked to be transferred to the firm's main office in Puerto Rico. On November 20, 1998 plaintiff notified defendant that she would be relocating with the child to Puerto Rico as of January 1, 1999 and suggested that they arrange a new visitation schedule.

Defendant's motion to prevent the move ensued, and plaintiff cross-moved for permission to relocate. For the reasons that follow, we reverse the order granting the mother's application for permission to relocate with the child.

Where a custodial parent seeks to change her residence in a manner that would detrimentally affect the other parent's ability to enjoy frequent and regular contact with the child, the relocating party bears the burden of establishing that the proposed move is nevertheless in the best interests of the child (see, *Matter of Tropea v Tropea*, 87 NY2d 727, 741; *Matter of Burr v Emmett*, 249 AD2d 614). Among the factors to be considered are: each parent's reasons for seeking or opposing the move; the quality of the relationship the child has with each of the parents; the expected impact of the move on the relationship the child would have with each of the parents; the degree to which the custodial parent's and child's life may be enhanced economically, emotionally and educationally by the move; and the feasibility of preserving the relationship between the noncustodial parent and child through suitable visitation arrangements (*Matter of Tropea v Tropea, supra*, at 740-741). Here, the most critical considerations are plaintiff's reason for and need for the move, the impact of the move on the child's relationship with her father, the difficulty of maintaining the central role he has played in her life, and the absence of any showing that the child's life would be enhanced by the move.

This case does not involve the type of family arrangement frequently discussed in the literature, in which the father plays a secondary role in the daily life of the parties' child (*see, e.g.*,

Note, Sheehan, *Post-Divorce Child Custody and Family Relocation*, 9 Harv Women's LJ 135; Bruch and Bowermaster, *The Relocation of Children and Custodial Parents: Public Policy, Past and Present*, 30 Fam L Q 245, 251; Wallerstein and Tanke, *To Move or Not To Move: Psychological and Legal Considerations in the Relocation of Children Following Divorce*, 30 Fam LQ 305). The child has had a close relationship with both parents, each of whom is able to properly care for her. The mother has served as the family's primary breadwinner, while the father, working out of his home as an architect, earns less than one third of what the mother has earned as a corporate lawyer, and those earnings admittedly arrive sporadically. On the other hand, the father's outstanding parenting skills were well established, and the mother presented no evidence to the contrary. He has performed many of the functions of the primary caregiver for the child. While the family was intact, and thereafter to the extent the visitation schedule allowed, the father has been the parent who took the child to school and picked her up after school, and who arranged for and transported the child to play dates and other after-school activities. It is undisputed that the father has taken full advantage of the agreed-upon visitation schedule, which allowed him to have the child with him on alternating weekends from Friday afternoon to Monday morning, as well as on certain weekdays after school.

In view of the father's undisputed active participation in the child's regular day-to-day life, it was error for the IAS Court to conclude that his visitation with the child would not be significantly and detrimentally affected by the relocation.

The *Tropea* Court noted that there are some families for which a change in the visitation schedule, by reducing ordinary weekday or weekend visits and substituting extra summer and long-weekend visits, may have no detrimental impact on the relationship between the noncustodial parent and the child (*see*, 87 NY2d, *supra*, at 738). This is not such a case. An increase in the amount of time awarded for the father's summer visits with the child and in the number of his holiday weekend visits cannot satisfactorily make up for the loss in the quality of the visitation he has enjoyed with the child up to the time of the relocation application.

We are puzzled by the court's conclusion that the disruption of the father's visitation would be minimal in that he would only have to give up his weekday visits. According to the record, the full trip to and from the child's new home in Puerto

Rico would take approximately eight hours each way. Given the time as well as the expense, we must conclude that the father's alternate weekends with the child would be utterly unlike the life they were able to enjoy together when the child resided in New York. Even assuming that the father is physically and financially able to make the 16-hour trip to Puerto Rico every other weekend without negative impact on his employment, he has no home there. It was not appropriate to rely upon the presence of the father's extended family in Puerto Rico; a place to which he makes occasional visits cannot serve as a viable substitute location for a comfortable home for visitation with his child every other weekend for the duration of her childhood.

As to the court's suggestion that the father could work just as easily from Puerto Rico as he could from New York, he is not licensed to practice architecture in Puerto Rico. While he is self-employed and works out of his home, he clearly needs to be available for meetings with clients. As meager as the evidence was that plaintiff's proposed move to Puerto Rico was either necessary or in the child's best interests, there was less evidence from which it would be found that defendant could earn a living there.

There have been many cases in which it was shown that the proposed relocation would offer both the custodial parent and the child substantial benefits, such as opportunities for the parent's professional advancement, or living arrangements much more conducive to the child's well-being (*see, e.g., Long v Long*, 252 AD2d 722, 723; *Matter of Harder v Yandoh*, 228 AD2d 814, 817). No such showing was made here. It was not established that the move would be beneficial to the child economically, emotionally or educationally.

The IAS Court found it determinative that the mother "has been the primary economic provider for the family, and will continue to be required to fulfill that role." While this observation is correct, it does not entitle the mother to move with the child in the absence of a showing that she would be unable to continue to provide for the family in New York (*see, Matter of Kemp v Teeter*, 252 AD2d 685), particularly since her employment history demonstrates that in the past, she has been able to find new, remunerative employment whenever she sought it. The testimony of one headhunter who specialized in placements for large law firms did not suffice to make the requisite showing. The court's conclusion that the child's standard of living would fall unless the mother accepted the offered associate

position in Puerto Rico (at a substantially reduced salary) was not supported by the evidence.

Moreover, in addition to the detrimental impact on the father-child relationship, the move would require the child to adjust initially to her new surroundings, to two new schools in a nine-month period, a new babysitter, and a number of changes in living arrangements. While the presence of both parties' extended families in Puerto Rico may carry some weight in favor of the requested relocation, it is not enough to offset this detrimental effect, in view of the paucity of other evidence that the move would inure to the benefit of the child.

One additional consideration militates against relocation. In the past, when the parties resided in geographical proximity, the mother made important decisions concerning the child, relating to education, medical care, and the choice of babysitter, without involving the father in the decision-making process and despite his requests to be notified and consulted. Indeed, he offered evidence that the mother made numerous efforts geared toward limiting his time with the child and the child's attachment to him. The motion court's precatory admonition that the mother must "reach out" to include the father in the major decisions involving the child can have virtually no effect when he lives so far from them and can only be there at times when school personnel and other professionals will generally be unable to meet with him.

Accordingly, the order of the Supreme Court, New York County (Joan Lobis, J.), entered on or about February 4, 1999, which granted plaintiff's cross motion for permission to relocate with the parties' minor child to Puerto Rico, and denied defendant's motion to stay the relocation, should be reversed, on the law and the facts, with costs, defendant's motion granted and plaintiff's cross motion denied.

WILLIAMS, J. P., TOM, BUCKLEY and FRIEDMAN, JJ., concur.

Order, Supreme Court, New York County, entered on or about February 4, 1999, reversed, on the law and the facts, with costs, motion by defendant to stay relocation of the minor child granted and plaintiff's cross motion for permission to relocate with the parties' minor child denied.