2023 IL App (2d) 230092
No. 2-23-0092
Opinion filed August 10, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| ALYSSA C. BURMOOD, | ) | Appeal from the Circuit Court |
| | ) | of Kane County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 19-F-220 |
| | ) | |
| CHRISTOPHER A. ANDERSON, | ) | Honorable |
| | ) | Bradley P. David, |
| Respondent-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Justices Hutchinson and Jorgensen concurred in the judgment and opinion.

**OPINION**

¶ 1       Plaintiff, Alyssa C. Burmood, appeals the order by the circuit court of Kane County denying her petition to relocate within Illinois with the minor child she shares with respondent, Christopher A. Anderson. On appeal, Alyssa argues that the trial court's decision was against the manifest weight of the evidence. For the reasons that follow, we reverse and remand with directions.

¶ 2                                   I. BACKGROUND

¶ 3       Alyssa and Christopher both grew up in Galesburg. Alyssa moved to Naperville to attend college while Christopher moved to Aurora for the same reason. On November 26, 2017, Alyssa gave birth to the parties' child, A.A. On July 3, 2019, the trial court entered a judgment of parental responsibility providing that A.A. would primarily reside with Alyssa.

¶ 4    On July 20, 2021, Alyssa filed a petition to relocate to Galesburg with A.A. She indicated that the proposed relocation would allow her to move into a single-family residence in a great neighborhood with a top elementary school versus her current residence in a one-bedroom apartment with no private space for A.A. She stated that daycare and after school care were more readily available and less expensive in Galesburg. She also asserted that Christopher was in substantial arrearage on his obligations for child support and his court-ordered contribution to A.A.'s daycare expenses. Alyssa additionally stated that relocation would be in A.A.'s best interests because she would be closer to both her maternal and paternal grandparents. The relocation would also allow A.A. to attend a Catholic school in Galesburg that several of her cousins were already attending.

¶ 5    On August 13, 2021, Christopher filed a petition for a temporary restraining order and a preliminary injunction seeking to prevent Alyssa from relocating with A.A. to Galesburg. Christopher asserted that the relocation would negatively impact his parenting time with A.A.

¶ 6    On September 13, 2021, the trial court appointed a guardian *ad litem* to investigate the matter.

¶ 7    On January 17 and 18, 2023, the trial court conducted a hearing on Alyssa's petition. Alyssa described her current Naperville residence as located in an "apartment complex" that is surrounded by an industrial area. Her current monthly rent for the one-bedroom apartment was $985. She had a fully remote position for S.D. Wheel Corporation and earned $19 per hour.

¶ 8    Alyssa had a large extended family in Galesburg. A.A. had a close relationship with her extended family, and she was well bonded with them. Alyssa testified that she was close with Christopher's family and would bring A.A. to see them without Christopher facilitating those visits.

¶ 9  Alyssa had another child, with Michael McGruder. They began dating in late July or August 2021. He taught seventh and eighth grade physical education in Galesburg. In August 2022, Christopher filed a petition for an order of protection against Michael, alleging that Michael had physically abused A.A. The Department of Children and Family Services (DCFS) investigated Christopher's claim and dismissed it as unfounded. Michael ended his romantic relationship with Alyssa shortly after Christopher filed his petition for an order of protection, as Michael was fearful of additional allegations. Alyssa and Michael remained friends and coparented amicably.

¶ 10  Alyssa testified that she first informed Christopher that she wanted to move to Galesburg in May 2021. She explained that she was unable to find any homes within her price range in Aurora or Naperville. (She had been preapproved for a $140,000 mortgage.) Christopher told her that it was a good idea to buy rather than rent. She again discussed relocating when both she and Christopher were in Galesburg on July 4 for the holiday. Christopher told her that he "didn't care if [she] moved to Galesburg as long as [she] didn't bring [A.A.] around *** Michael."

¶ 11  On July 7, 2021, Alyssa put an offer on a house in Galesburg. The purchase price was $119,000. The monthly mortgage payment would be a little over $820, about $160 less per month than her Naperville rent. She never moved into the house because Christopher objected to her relocating.

¶ 12  Alyssa testified that she believed A.A. would directly benefit from the relocation, due to having family living nearby and more financial stability. She testified that, compared to Naperville, the cost of living in Galesburg was much more affordable for a single mother. Alyssa also testified that Christopher had stopped paying child support in March 2020 and resumed payments in May 2021, around the time that she began expressing interest in relocating. (His monthly child support obligation was approximately $176.) Alyssa testified that Christopher was also required to pay half of A.A.'s monthly daycare expenses of approximately $175, but he had not been paying that.

¶ 13    If granted permission to move, Alyssa would like A.A. to attend Costa Academy, a Catholic school. Costa Academy offered small class sizes. A.A.'s three paternal cousins currently attended school there. Because Christopher's grandmother worked there, A.A. could attend Costa Academy at a reduced tuition rate of $450 per month.

¶ 14    Alyssa proposed a parenting schedule wherein Christopher would continue to receive every other weekend. She also proposed that, if a school holiday fell on a Monday, his weekend would be extended to include that Monday. For the summer, Alyssa proposed that the parties exercise a week-on, week-off schedule. Alyssa explained that this plan would give Christopher the same or more parenting time than he currently had.

¶ 15    Christopher testified that he objected to relocation because his weekday time with A.A. would be cut "drastically," which "means lots to [him]." He testified that he coached sports in the past and wanted to coach A.A. in sports in the future. He acknowledged that he had aunts, uncles, and grandparents living in Galesburg. He currently went there once or twice a month with A.A. so that she could visit her cousins.

¶ 16    Christopher testified that his work provided him with a lot of flexibility before, during, and after the workday. In an earlier deposition, he indicated that his monthly income was between $800 and $900. During cross-examination, however, he acknowledged that he made three deposits to his bank account between May and July 2022 that were between $5079 and $8031. He currently had a child support arrearage, but he was now paying $300 a month toward that.

¶ 17    The guardian *ad litem* testified that A.A. was well attached and well bonded with both parents. A.A. was also well bonded to both parents' extended families, and her grandparents offered her a very stable and loving environment. While visiting Galesburg, both Alyssa and A.A. had individual bedrooms at her parents' home. If Alyssa were granted permission to relocate, she would live with her parents until she found a new home.

¶ 18 The guardian *ad litem* believed that a loss of weekly contact with Christopher would adversely affect their relationship. He did not believe that a schedule could be fashioned in light of relocation that would be in A.A.'s best interests. He believed that the distance was too far for anything other than weekend parenting time. As such, he recommended against relocation.

¶ 19 The trial court took judicial notice of a May 19, 2022, order regarding unpaid child support. That order found there to be a $5558 arrearage for unpaid child support and daycare expenses, as well as a judgment of $5900 for unpaid attorney fees and interest.

¶ 20 Following the hearing, the trial court denied Alyssa's petition to relocate. The trial court stated that it had considered all the statutory factors set forth in section 609.2(g) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/609.2(g) (West 2022)). The trial court found that most of those factors weighed against or strongly against relocation.

¶ 21 Following the trial court's ruling, Alyssa filed a timely notice of appeal.

¶ 22                                    II. ANALYSIS

¶ 23 Alyssa contends that the trial court's decision denying her petition to relocate with A.A. was against the manifest weight of the evidence. A parent who has been allocated a majority of parenting time or equal parenting time may seek to relocate with the minor children. *Id.* § 609.2(b). If the nonrelocating parent objects to the proposed relocation, the other parent must file a petition seeking the trial court's permission to relocate. *Id.* § 609.2(f). In adjudicating a relocation petition, the court must make its determination based on the best interests of the child. *In re Marriage of Fatkin*, 2019 IL 123602, ¶ 32.

¶ 24 Section 609.2(g) of the Act enumerates the following best-interests factors a trial court should consider when making this determination: (1) the circumstances and reasons for the relocation; (2) the reasons, if any, why a parent is objecting to the relocation; (3) the history and quality of each parent's relationship with the child and specifically whether a parent has

substantially failed or refused to exercise the parental responsibilities allocated to him under the parenting plan or allocation judgment; (4) the educational opportunities for the child at the existing location and at the proposed new location; (5) the presence or absence of extended family at the existing location and at the proposed new location; (6) the anticipated impact of the relocation on the child; (7) whether the court will be able to fashion a reasonable allocation of parental responsibilities between all parents if the relocation occurs; (8) the wishes of the child, taking into account the child's maturity and ability to express reasoned and independent preferences as to relocation; (9) possible arrangements for the exercise of parental responsibilities appropriate to the parents' resources and circumstances and the child's developmental levels; (10) minimization of the impairment to a parent-child relationship caused by a parent's relocation; and (11) any other relevant factors bearing on the child's best interests. 750 ILCS 5/609.2(g) (West 2022).

¶ 25 The parent seeking relocation has the burden of proving, by a preponderance of the evidence, that it is in the child's best interests. *In re Marriage of Tedrick*, 2015 IL App (4th) 140773, ¶ 49. A trial court's best-interests determination should not be reversed unless it is clearly against the manifest weight of the evidence and it appears that a manifest injustice has occurred. *Id.* ¶ 51. A trial court's determination is against the manifest weight of the evidence where the opposite conclusion is clearly evident or where the court's findings are unreasonable, arbitrary, and not based on the evidence. *Banister v. Partridge*, 2013 IL App (4th) 120916, ¶ 47. It is not the function of a reviewing court to reweigh the evidence. *In re Marriage of Elliott*, 279 Ill. App. 3d 1061, 1065-66 (1996).

¶ 26 Here, the trial court determined that relocating to Galesburg was not in A.A.'s best interests. With the deferential manifest-weight-of-the-evidence standard in mind, we will review the court's analysis of the best-interest factors by addressing each one in turn.

¶ 27 A. Reasons for the Intended Relocation

¶ 28    Alyssa's reason for the intended relocation to Galesburg was to enhance her standard of living by improving her financial situation. Alyssa could achieve this by moving to Galesburg because the cost of living there was substantially cheaper than in Naperville. For example, she could afford to own a two-bedroom home in Galesburg for $160 less per month than her one-bedroom rental in Naperville.

¶ 29    Alyssa also sought to relocate so she could be closer to her extended family. This also had financial benefits, such as the availability of family to help with childcare.

¶ 30    The trial court agreed with Alyssa's assessment of the financial benefits of living in Galesburg in that "the cost of living was significantly cheaper in the Galesburg area rather than where she resides currently." The trial court found that Alyssa would be able to obtain a more suitable residence for A.A. if she were permitted to relocate and that "there would be other trickle-down benefits to the minor child."

¶ 31    Despite finding that that both Alyssa and A.A. would benefit from the relocation, the trial court found the evidence on this point to be "minimally" persuasive. The trial court's assessment of the evidence on this factor is perplexing. Our courts have long recognized that improvements in the financial situation of the custodial parent will generally benefit the child by enhancing the child's standard of living. *In re Marriage of Collingbourne*, 204 Ill. 2d 498, 529 (2003). As such, this factor is a significant reason in favor of granting Alyssa's petition for relocation.

¶ 32                                B. Reasons for Objecting to the Relocation

¶ 33    The trial court considered Christopher's reasons for objecting to the relocation, finding that he was concerned that the relocation would impair his ability to be an active, involved parent. The trial court noted that Christopher currently saw A.A. weekly. The trial court also found that there was a strong possibility that A.A. would be involved in sports as she grows. The trial court observed that Christopher was hopeful that he would have the opportunity to coach A.A. in sports

as she got older and found that relocation would take away Christopher's ability to do so. The trial court therefore determined that this factor weighed against relocation.

¶ 34 Alyssa argues that the trial court's determination that Christopher would lose the opportunity to coach A.A. was speculative and misapplied the evidence. We agree. At the time of the trial, A.A. was not involved in any extracurricular events. In the spring of 2021, she had been involved in dance class. She had 16 lessons and a dance recital. Christopher attended one of those lessons. He showed up late to her dance recital and missed half of it.

¶ 35 In the spring of 2022, Alyssa signed A.A. up for basketball. Alyssa drove her back and forth each week to the hour-long practices.

¶ 36 To begin with, the trial court's finding that relocation would take away Christopher's ability to coach A.A. in sports in the future was unduly speculative, as A.A. was not involved in any sports at the time of trial. Such speculation was not a proper basis to conclude that relocation would not be in A.A.'s best interests. See *Daniggelis v. Pivan*, 159 Ill. App. 3d 1097, 1103-04, (1987) (verdict that is based on conjecture or speculation is against the manifest weight of the evidence). Further, the trial court's finding was contradicted by the evidence, which showed that, despite Christopher's very flexible work schedule, to date he had been minimally involved in A.A.'s extracurricular activities.

¶ 37 As a further indication that Christopher's stated desire to be involved in A.A.'s activities was pretextual, we note that the record suggests that a primary reason for Christopher's objection to Alyssa relocating to Galesburg was that he did not want her to be close to Michael. Christopher's disdain for Michael is apparent from the allegations of child abuse that he made against Michael, which DCFS determined to be unfounded. According to Alyssa, Christopher told her that he did not care if Alyssa returned to Galesburg as long as she kept A.A. away from Michael. Christopher told the guardian *ad litem*, without any evidence, that Michael "might have had some connections

or involvement with a less-savory element in the Galesburg area." We further note that Christopher continues to complain about Michael in his appellate brief, asserting that Alyssa's "desire to relocate is driven more by her desire to be with or near [Michael] than any alleged financial reasons." The trial court did not consider Christopher's animosity toward Michael as a reason why Christopher was objecting to Alyssa's relocation petition. The record indicates that it should have.

¶ 38    As such, although some evidence in the record supports the trial court's determination that Christopher was concerned that relocation would impact his relationship with A.A., the record shows that Christopher had not previously involved himself in A.A.'s activities and that he had an ulterior motive in objecting to Alyssa's relocation to Galesburg—his desire to keep her and A.A. away from Michael. The trial court's reliance on speculation and its unexplained failure to weigh all of the relevant evidence renders its finding on this factor against the manifest weight of the evidence. See *Banister*, 2013 IL App (4th) 120916, ¶ 47.

¶ 39            C. History and Quality of the Parents' Relationship with the Child

¶ 40    As to this factor, the trial court found that Christopher had exercised almost all the parenting time allotted to him. The trial court found that this factor weighed "strongly" against relocation. However, the trial court did not consider the evidence that Christopher was in arrears on his child support. The trial court also did not consider that Christopher's testimony regarding his income was impeached at trial, as the evidence revealed that he was earning more income than he claimed. The reasonable inference from Christopher's attempt to conceal how much he was actually earning was that he was trying to minimize his child support obligations.

¶ 41    There is no binding Illinois precedent as to whether a court should consider a parent's child support arrearage when considering whether it is in the child's best interests to grant the other parent's petition to relocate. However, another district of the Illinois Appellate Court recently considered this issue and determined that the objecting parent's "failure to satisfy his financial

obligations to his children *** is an important consideration to evaluate when determining the best interests of the children." *In re Marriage of Miller*, 2023 IL App (5th) 220573-U, ¶ 46. The court observed that this consideration is "especially important" when relocation would allow the petitioning parent to earn more annually and have more opportunities for career advancement. *Id.*

¶ 42     We note that here, unlike in *Miller*, the petitioning parent's relocation would not allow her to increase her income significantly. Still, it would allow her to reduce her expenses. In *Kevin McK. v. Elizabeth A.E.*, 972 N.Y.S.2d 25, 27, 30 (App. Div. 2013), the court determined that this was a "powerful consideration" in considering whether relocation would be in the best interests of the child. There, the court noted that the father had a record of nonpayment of child support. The court found that the proposed new location would provide the benefits of living near and having the financial and emotional support of the child's maternal extended family, enabling the child to enjoy a comfortable life free of economic distress, among a loving and supportive extended family. The court explained that this consideration would be less significant "if the father were providing consistent, steady, and sufficient support to ensure the child's lifestyle at a level above subsistence; however, nothing in the record provides for such assurance." *Id.* at 30.

¶ 43     We agree with both the *Miller* and the *Kevin McK.* courts that it is important to consider whether an objecting parent is financially supporting the child he wants to prevent from relocating. If he is not, the petitioning parent's request to relocate so she can improve the financial condition of both her and her children should be afforded additional weight. The trial court's failure to consider that Christopher was in arrears in child support and that he was attempting to minimize what income he did earn was improper.

¶ 44     Christopher insists that his alleged failure to pay adequate child support is irrelevant to his right to exercise regular and meaningful parenting time with A.A. He insists that he has shown himself to be a reliable and responsible parent who should be afforded every opportunity to

continue his relationship with his child. We disagree. Christopher's failure to pay child support for over a year does not demonstrate responsibility. Rather, as stated above, the trial court should consider when a parent is trying to relocate somewhere with a more affordable cost of living. See *Miller*, 2023 IL App (5th) 220573-U, ¶ 46. We also observe that, with respect to this factor, Christopher's professed love and regard for A.A.'s well-being is at odds with his actions, similar to how his professed desire to be involved in her activities is at odds with his record of making time for such involvement, even while living nearby and with a very flexible work schedule.

¶ 45        D. Child's Educational Opportunities and the Presence of Extended Family

¶ 46    The trial court made no findings as to this factor. Alyssa testified that, if she were allowed to relocate, she could enroll A.A. in a private school that three of A.A.'s cousins also attended. This is not an opportunity that A.A. would have if she remained in Naperville. Thus, this factor weighs, at least minimally, in favor of relocation.

¶ 47    Christopher argues that Alyssa's potential plan to send A.A. to a private school if she is allowed to relocate undermines her argument that the move to Galesburg would be financially beneficial to her. He contends that Alyssa "would be spending as much, if not more, to secure appropriate accommodation and would have the added financial burden of $450.00 per month for private school tuition for the minor child."

¶ 48    Christopher's argument is unpersuasive. It is undisputed that the standard cost of living is cheaper in Galesburg than in Naperville. One of the benefits of moving to Galesburg is that Alyssa would be able to send A.A. to a private school. That Alyssa would choose to spend a significant portion of the financial benefits she would enjoy by moving to Galesburg on A.A.'s education is within her discretion as the child's primary guardian.

¶ 49    As to the presence of extended family, the trial court found that both Christopher's and Alyssa's extended families were from Galesburg and thus this factor weighed strongly in favor of relocation. No one disputes the trial court's determination on this issue.

¶ 50                    E. The Anticipated Impact of the Relocation on the Child

¶ 51    The trial court found that Christopher had been a consistent positive influence on A.A.'s life. The trial court therefore believed that this factor weighed against relocation.

¶ 52    For some of the reasons already stated, the trial court's determination on this factor appears arbitrary in that it fails to acknowledge significant evidence in the record. As noted earlier, the move would improve Alyssa's financial situation, and this would necessarily improve A.A.'s financial situation as well. See *Collingbourne*, 204 Ill. 2d at 529. These improved financial benefits are significant because they help compensate for the child support that Alyssa had not been receiving from Christopher. See *Kevin McK.*, 972 N.Y.S.2d at 27, 30. The trial court also failed to acknowledge the evidence indicating that Christopher would be able to maintain the closeness of his relationship with A.A. even if she were in Galesburg. Christopher would have equal or more parenting time with A.A., he already traveled to Galesburg twice a month, and he has been only rarely involved in her activities. Further, the presence of extended family, possibly including cousins as fellow students at her school, would likely have a positive impact on A.A. The trial court's failure to consider any of this evidence when reviewing this factor undermines its assessment that this factor weighed against relocation.

¶ 53    F. Reasonable Allocation of Parental Responsibilities and the Child's Wishes

¶ 54    The trial court found that it could fashion a reasonable allocation of parental responsibilities if the relocation were to occur. The trial court determined that this factor weighed in favor of relocation "minimally." This finding was not against the manifest weight of the evidence.

¶ 55 The trial court did not make a finding as to the child's wishes. Due to her young age, A.A. was not interviewed about whether she preferred to live in Naperville or Galesburg. As such, it was not improper for the trial court to not make any specific findings as to this factor.

¶ 56                    G. Exercise of Parental Responsibilities and Minimization

of Impairment to the Parent-Child Relationship

¶ 57 The trial court found that both of these factors weighed against relocation because Christopher would not be able to exercise his mid-week parenting time if relocation were allowed. Relying on *Tedrick*, 2015 IL App (4th) 140773, Alyssa argues that the trial court placed too much weight on these factors and placed too heavy a burden on her to demonstrate that she could maintain the "status quo" parenting time for relocation to be granted.

¶ 58 In *Tedrick*, the mother petitioned to move from Illinois to South Carolina. The trial court denied the petition in part because the move would have a negative impact on the father's regular parenting time. The appellate court reversed, holding that this was not a proper basis to deny relocation. The appellate court explained that, "if the prospect of a reduction in the frequency and amount of visitation were a sufficient reason to deny a petition for removal, then almost all such petitions would have to be denied." *Id.* ¶ 67.

¶ 59 We agree with the *Tedrick* court that the fact that the parent objecting to relocation would see the child less does not mean that  all of the other statutory and relevant factors can be overlooked. Rather, the trial court must consider the totality of the factors in determining what is in the best interests of the child.

¶ 60 The trial court also reached its determination that these factors weighed against relocation because Alyssa had purchased her Galesburg home the day before filing her notice of intent to relocate, "in direct contradiction to the Parenting Plan and Allocation Judgment/Order." The trial court asserted that this action reflected Alyssa's lack of consideration of the impact of relocation

on A.A. and her minimization of A.A.'s relationship with Christopher. The trial court also noted that Alyssa had a child with Michael while the case was ongoing and that they planned to coparent that child, indicating that Alyssa would be traveling to Galesburg frequently regardless of whether she was allowed to relocate with A.A. The trial court commented that, because Alyssa's job was remote, she had the flexibility to travel to Galesburg "any time she pleased"; thus, A.A. would have ample opportunity to be near her extended family regardless of whether the relocation petition was granted. The trial court found that these additional factors weighed strongly against relocation.

¶ 61 The trial court's rationale suggests that, because Christopher had a good relationship with A.A., Alyssa was wrong to try to interfere with that relationship by seeking to relocate with A.A. to Galesburg. That is not the proper standard to use in analyzing a petition to relocate. See *id.* ¶ 61 ("Given that a court lacks the power to compel a noncustodial parent to remain in Illinois, the interests of the custodial parent, in a removal action, should not be automatically subordinated to the interests of the noncustodial parent.").

¶ 62 We also note that Michael being in Galesburg meant that, in conjunction with her extended family, Alyssa would have a larger support group there than she would in Naperville. We fail to see how the trial court could construe that as a bad thing.

¶ 63 We also observe that the trial court construed Alyssa's work flexibility against her in determining that she could travel to Galesburg anytime she wanted to, but it did not apply the same scrutiny to Christopher, as it did not even acknowledge his testimony that his work also afforded him flexibility and that he already traveled to Galesburg a couple of times a month. Moreover, just because Alyssa had work flexibility did not mean that she could travel to Galesburg whenever she wanted. The record reveals that A.A. would soon be starting school. It would therefore not be practical for Alyssa to go to Galesburg whenever "she pleases" and disrupt A.A.'s educational schedule.

¶ 64                              H. Summary of All Factors

¶ 65    In sum, the evidence indicates that Alyssa's move to Galesburg would enhance her financial position and allow her to receive more assistance from her extended family. This was significant because Christopher's failure to pay child support for over a year and his current arrearage meant that it was more difficult for Alyssa to get by in the more expensive Naperville area. Although it would be easier for Christopher to maintain a relationship with A.A. in Naperville, this factor did not outweigh the other considerations indicating that A.A.'s life would be improved if she moved to Galesburg. This is especially true as the trial court determined that a reasonable visitation schedule could be made if relocation was approved. Overall, the majority of the statutory factors showed that relocation would have a positive impact on A.A. and that the negative impact on Christopher was limited.

¶ 66    In reviewing the trial court's decision, we remain mindful that we must not substitute our judgment for that of the trial court. However, after carefully considering the record and the trial court's findings based on the statutory and other relevant factors, we conclude that the trial court's decision to deny the petition to relocate was against the manifest weight of the evidence. Thus, we reverse the court's judgment and remand with directions to grant the petition for relocation and to make a new allocation of parenting time, with liberal parenting time for Christopher.

¶ 67                              III. CONCLUSION

¶ 68    The judgment of the circuit court of Kane County is reversed, and we remand this case with directions to grant the petition for relocation and to make a new allocation of parenting time, with liberal parenting time for Christopher.

¶ 69    Reversed and remanded with directions.

*Burmood v. Anderson*, **2023 IL App (2d) 230092**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Kane County, No. 19-F-220; the Hon. Bradley P. David, Judge, presiding. |
| **Attorneys for Appellant:** | John Peter Morris Peskind, of Peskind Law Firm, of St. Charles, for appellant. |
| **Attorneys for Appellee:** | Reno Renzetti, of Nordini & Thompson, Ltd., of Naperville, for appellee. |