Matter of Emily F. v Victor P. (2023 NY Slip Op 04634)

Matter of Emily F. v Victor P.

2023 NY Slip Op 04634

Decided on September 14, 2023

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: September 14, 2023

Before: Kapnick, J.P., Friedman, Gesmer, González, Higgitt, JJ.

Index No. V-125-17/22D, V-126-7/22D Appeal No. 566 Case No. 2022-04152 

[*1]In the Matter of Emily F., Petitioner-Appellant,
v
Victor P., Respondent-Respondent.

Karen M. Jansen, White Plains, for appellant.
Karen D. Steinberg, New York, for respondent.
Janet Neustaetter, The Children's Law Center, Brooklyn (Eva D. Stein of counsel), attorney for the child.

Order, Family Court, Bronx County (LlinÉt M. Rosado, J.), entered on or about September 6, 2022, which, to the extent appealed from as limited by the briefs, after a hearing, denied petitioner mother's modification petition, ordered the mother to return the child to New York by September 27, 2022, and sua sponte awarded respondent father residential custody, the parties joint legal custody, and the father final decision-making authority as to the child's education if the mother did not relocate back to New York, reversed, on the law and the facts, without costs, and the matter remanded to Family Court for further proceedings consistent herewith.
We decline to disturb Family Court's discretionary determination, made after a hearing and an in camera examination of the child, to deny the mother's petition to relocate with the child to North Carolina (see Tropea v Tropea, 87 NY2d 727, 736 [1996]). The experienced Justice who determined the motion conducted thorough proceedings, was in a superior position to evaluate the parties' credibility and to assess and weigh the in camera testimony of the child, and issued a comprehensive decision applying Tropea. Family Court's discretionary determination to deny the relocation petition was supported by the record before it.
However, as the attorney for the child argues on this appeal, the mother's motion to this Court for a stay pending appeal (a motion this Court granted by order entered November 15, 2022 and continued by order entered April 20, 2023), raised legitimate concerns about the adequacy of representation by her assigned counsel at the fact-finding hearing on her relocation petition. Specifically, in her September 22, 2022 affidavit in support of her stay motion, the mother attests that counsel failed to adequately present evidence of the financial necessity that supports her decision to relocate. On account of these omissions, as well as the passage of time and intervening events that have occurred since the court's September 6, 2022 order, we reverse the court's denial of the mother's petition and remand for a new hearing to determine what is in the child's best interests (see Tropea, 87 NY2d at 140-141). Although the facts warranting a new hearing are outside the record on appeal, given that changed circumstances have particular significance in child custody matters, we take notice of the new facts to the extent they indicate that the record is no longer sufficient to determine the mother's relocation petition (see Matter of Michael B., 80 NY2d 299, 317-318 [1992]). The new hearing should be conducted forthwith, and remote proceedings may be used to spare the mother and the child the inconvenience and expense of in-person appearances (see generally Judiciary Law § 2-b).
In the interim, the child may remain in North Carolina and the father's visitation with the child shall continue on the terms set forth in this Court's November 15, 2022 order.
Family Court should not have conditionally changed[*2], sua sponte, its prior award to the mother of sole legal and physical custody in the event she does not relocate back to New York, particularly given the absence of evidence that such a change in custody was in the best interests of the child (see Matter of Ross v Ross, 185 AD3d 595, 597 [2d Dept 2020]; Matter of Tekeste B.-M. v Zeineba H., 37 AD3d 1152, 1152-1153 [4th Dept 2007]).
All concur except Gesmer, J. who
dissents in a separate memorandum
as follows:

 GESMER, J. (dissenting)
 

I respectfully dissent. I would grant the mother's relocation petition and remand the proceeding to Family Court to issue a modified custody order establishing the father's parenting time.
While we generally defer to the trial court's determination in custody and relocation cases, I do not think it is appropriate to do so in this case. The mother established by a preponderance of the evidence, through her credible, relevant and uncontroverted testimony that her relocation with the child to North Carolina was in the child's best interests (Matter of Tropea v Tropea, 87 NY2d 727, 741 [1996]). The trial court failed to reach this conclusion because of several errors of law. First, in its enumeration of the critical considerations, the trial court failed to include the quality of the relationship between the child and the mother, a central factor in the Tropea analysis, and failed to consider the father's unsuitability to be the custodial parent (id. at 738-739; see also Matter of Jamee Bennett G. v John Nicolaas B., 200 AD3d 413, 414 [1st Dept 2021]). Second, the trial court gave no weight to "uncorroborated" testimony, although there is no requirement in the Family Court Act or elsewhere that the testimony of a party in a custody proceeding must be corroborated.
In making a relocation determination, the court is required to consider factors including the custodial parent's reasons for seeking leave to relocate; the degree to which the child's life will be enhanced emotionally, economically and educationally by the move; the quality of the child's relationship with each parent; the impact of the move on the child's relationship with the noncustodial parent; the viability of arrangements for meaningful parenting time with the noncustodial parent if the child relocates; the noncustodial parent's interest in securing custody; and the feasibility and desirability of a change of custody should the relocation petition be denied (Tropea, 87 NY2d at 738-739; see also Jamee Bennett G., 200 AD3d at 414). The court considered only the first, second, third, and fourth factors and gave short shrift to the rest; moreover, its consideration of all of the factors was greatly distorted by its refusal to consider testimony that it considered uncorroborated.
Here, it was undisputed that the mother had lost her employment in New York due to pandemic-related budget cuts and had been unemployed for more than a year. She applied for more than 60 positions in New York over [*3]approximately seven months without obtaining a position or even an offer. Only then did she expand her job search outside of New York and began to look for a job in North Carolina where she has family members. After only four months of looking, she was offered a good job in North Carolina in her field. While Family Court focused on what it deemed the mother's failure to demonstrate economic necessity, it was undisputed that she obtained employment in North Carolina in her field when she could not find any employment in New York after having made a vigorous effort to do so. Moreover, "[p]roof of economic necessity does not require the parent to wait until she has used up every dollar of her savings before taking steps to ensure that she will be able to care for the child's future economic needs" (Matter of Kevin McK. v Elizabeth A.E., 111 AD3d 124, 131 [1st Dept 2013]).
The mother also established that the child's quality of life would improve if she were permitted to move with him. She had obtained housing in North Carolina that was spacious enough to allow each of her two children to have a separate bedroom, which they did not have in New York. The apartment is in a development with amenities including a private pool, tennis court, and playground. The mother's extended family lives nearby (see Matter of Catherine L. v Jeffrey S., 178 AD3d 511, 511 [1st Dept 2019] [relocation in child's best interests where father showed that the move to Georgia would improve the child's quality of life]).
The record further establishes that the mother has always been the child's primary caretaker. She made all arrangements for his education, medical care, and day-to-day care. She has always encouraged the father's relationship with the child. As a result, the father has a warm relationship with the child, even though he only sees him — by the father's choice — on alternate weekends (see id. at 511; Karen Michelle F. v Wilfredo C., 116 AD3d 561, 561 [1st Dept 2014]). The father has never been involved in the child's schooling or medical care. Indeed, although the custody order entitled the father to medical and educational information, the father took no meaningful effort to become involved in those aspects of the child's life. He testified that the child's school had once declined to provide him with information, which apparently occurred several years ago, during a time when an order of protection was in effect against the father and in favor of the mother. Yet he never took any further steps to be involved in the child's education or medical care, even though the order of protection expired in 2018. He never attended a parent-teacher conference and was not even sure what grade the child was in.
Notably, the father also never filed a petition seeking custody of the child, even though the mother advised him of her wish to move to North Carolina months before she filed her relocation petition. There is no support in the record for a finding that it would be [*4]either feasible or desirable to change custody to the father. His testimony makes clear that he had given no thought to how he would get the child to or from school. While he mentioned neighbors whom the child is close to, he admitted that he had not asked them whether they would be willing to provide him assistance in caring for the child.
Furthermore, as the Court of Appeals has noted,
"[t]here are undoubtedly circumstances in which the loss of . . . weekend visits necessitated by a distant move may be devastating to the relationship between the noncustodial parent and the child. However, there are undoubtedly also many cases where less frequent but more extended visits over summers and school vacations would be equally conducive, or perhaps even more conducive, to the maintenance of a close parent-child relationship, since such extended visits give the parties the opportunity to interact in a normalized domestic setting" (Tropea, 87 NY2d at 738).
Here, the mother vigorously supported the child's continuing relationship with his father, by proposing that the child spend time with his father for the entire summer school break and his full winter break, including Christmas and New Year holidays. She further testified that she would assist with transporting the child for visits with the father in New York and with the cost of any travel necessary for the father to visit the child. As the attorney for the child notes, the father would actually have more time with the child under the mother's parenting time proposal than he did under the custody order, and the child, who was nine at the time of trial, was of an age that he could and did engage in meaningful video, text, and other electronic communication with the father, as demonstrated in some of the text messages entered into evidence. Moreover, I note that the mother suggested that the child spend a month with the father during the summer of 2022 and the father declined the offer, without offering any reason for passing up an opportunity to spend an entire month with his son.
Accordingly, I would reverse the court's denial of the mother's petition, grant the mother's request to relocate to North Carolina with the child, and remand for further proceedings to establish a modified custody order setting forth the particulars of the father's parenting time.
In view of my analysis of the record, I do not believe that it is necessary to send this matter back for further testimony. A continued court hearing would only put additional stress on this family, when there is adequate information available to grant the mother's petition.
I do agree with the majority that Family Court should not have conditionally changed, sua sponte, its prior award to the mother of sole legal and physical custody in the event she did not relocate back to New York. It did so in the absence of any petition by the father seeking custody, and in the absence of evidence that such a change in custody was in the best interests [*5]of the child (see Matter of Ross v Ross, 185 AD3d 595, 597 [2d Dept 2020]; Matter of Tekeste B.-M. v Zeineba H., 37 AD3d 1152, 1152-1153 [4th Dept 2007]). 
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: September 14, 2023