**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 240055-U

Order filed June 26, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| | ) | of the 18th Judicial Circuit, |
| SHANA R. MEHTA, | ) | Du Page County, Illinois, |
| | ) | |
| Petitioner-Appellee, | ) | Appeal No. 3-24-0055 |
| | ) | Circuit No. 19-D-871 |
| and | ) | |
| | ) | Honorable |
| | ) | Kenton J. Skarin, |
| NEEL MEHTA, | ) | Judge, Presiding. |
| | ) | |
| Respondent-Appellant. | ) | |

_____

JUSTICE ALBRECHT delivered the judgment of the court.
Presiding Justice McDade and Justice Holdridge concurred in the judgment.

_____

**ORDER**

¶ 1       *Held*:  The circuit court did not commit manifest error when it weighed the statutory factors for relocation and found that relocation was in the best interest of the children.

¶ 2       Respondent, Neel Mehta, appeals the Du Page County circuit court's decision to grant the petition to relocate filed by petitioner, Shana R. Mehta. Neel argues that the circuit court erred when weighing and considering the statutory factors for permitting relocation. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4          The parties were married on March 21, 2015, and on May 13, 2019, Shana filed for

dissolution of marriage. Two children were born during the marriage. On April 9, 2020, the

circuit court entered an allocation judgment regarding parenting time with the children. The

parties received joint decision-making responsibilities. The children would live with Shana, and

Neel would receive parenting time on Tuesdays, Thursdays, and alternating weekends. Neel's

parenting time would remain unsupervised as long as certain conditions were met, including

continuing to see a therapist.

¶ 5          After Shana filed several motions to restrict Neel's parenting time, Shana and Neel

entered into an agreed order to modify the allocation judgment on August 19, 2021. The order

awarded decision-making responsibilities to Shana and suspended Neel's parenting time

temporarily. Neel was to receive an evaluation prior to beginning supervised parenting time and

was ordered to remain in mental health treatment. The order also appointed an evaluation team to

assist Neel with his efforts to obtain parenting time with his children and directed Neel to

cooperate with the team.

¶ 6          On May 2, 2022, the court entered a judgment for dissolution. The judgment

acknowledged the allocation judgment as modified in the August 19, 2021, order. Shortly after

dissolution, Neel's parenting time was suspended at the recommendation of his evaluation team.

The order set forth a pathway for Neel to resume visitation that included an additional evaluation

and parenting classes.

¶ 7          On May 24, 2023, Shana filed a petition for relocation. In her petition, Shana stated that

she sought to relocate with her children to North Carolina. The children were five and seven at

the time of the filing. Shana also filed a petition for rule to show cause for Neel's failure to pay child support.

¶ 8      The court conducted a hearing on Shana's petition on December 19, 20, and 21, 2023. At the hearing, Darius Sethna testified that he was the court-appointed guardian *ad litem* (GAL) for the matter. He testified that in his role as GAL, he met with Neel, Shana, the children, and Shana's parents who lived in North Carolina. He also interviewed neighbors and first responders in the children's potential new neighborhood, Neel's parents, the children's therapist, and Doctor Carol Reid, who was in charge of Neel's evaluation team that was formed due to the August 19, 2021, order.

¶ 9      Sethna testified that Neel had not seen his children since June 22, 2022. Shortly thereafter, Reid recommended that Neel receive no parenting time until he received a chemical dependency and dual-diagnosis evaluation. Sethna knew Neel was still being medicated and assumed he was still seeing a psychiatrist in order to receive those prescriptions. He did not believe Neel was currently seeing a therapist and thought that Neel believed he did not need therapy. There were prior concerns that Neel had a drinking problem which led to Reid requesting a substance abuse evaluation, however, Sethna did not believe this was an issue anymore.

¶ 10      Sethna recommended Shana be allowed to move to North Carolina and that Neel should not receive parenting time until he participated in counseling, remained compliant with treatment and therapist recommendations, and continued to be treated by a psychiatrist. He further recommended that when parenting time was reinstated that it be supervised for a period before Neel could be phased back into unsupervised parenting time. The children should also continue

3

to meet with their therapist. Sethna believed these steps should be taken even if the court did not grant the relocation.

¶ 11　　In his testimony, Sethna addressed certain statutory factors outlined in the Illinois Marriage and Marriage Dissolution Act (Act). 750 ILCS 5/609.2(g) (West 2022). First, he testified that if relocation occurred, Shana would receive financial support from her parents, and they could help babysit if needed. He stated that Neel objected to the relocation arguing that he needed to be in his children's lives. This did not persuade Sethna, as Neel had not seen his children in a year and a half. Regarding history and quality of the children's relationships with each parent, he again noted that Neel had not seen his children in over a year and that Shana had been awarded sole decision-making responsibilities. When it came to extended family, he noted that while Neel's parents lived in Illinois, he did not believe they had taken adequate steps to be in the children's lives but were willing to help if asked. Sethna noted that he did not give the factors of the impact of relocation on the children and their wishes much weight because he believed the children were too young to understand how they would feel if relocation occurred. He believed the real impact on the children moving was regarding how to facilitate parenting time with Neel, however, he noted that parenting time was still uncertain until Neel finished his mental health evaluations and treatment.

¶ 12　　Shana testified she wished to relocate to an area that had a much larger Jewish population than her current community, which she believed would be beneficial for the children. She testified that the three main reasons she wanted to move were to gain familial support, financial enhancement, and to potentially help her employment. Since dissolution, Shana had been struggling financially, and her parents had been helping her. She felt that the move would allow her to pay off her debt and reduce childcare costs. While the company she worked for and her

4

clientele were primarily based in Illinois, she offered telehealth services she could conduct from anywhere. Moving to North Carolina would also provide an opportunity for the company she worked for to expand. Shana testified that if relocation were granted, she would facilitate supervised parenting time with Neel either remotely or in person with her providing transportation to Illinois. She also identified a facility that provided supervision of parenting time in North Carolina.

¶ 13          Reid testified that she was appointed Neel's parenting coach and assisted in clinical team meetings regarding his progress in treatment. She stated that the suspension of unsupervised time stemmed from a communication from the children's therapist that Neel was physically aggressive with them. Reid never witnessed any violent behavior from Neel in her interactions with him. While the DCFS investigation ruled the allegations to be unfounded, Reid recommended that Neel undergo substance abuse evaluations and an assessment to determine whether any mental health concerns were present.

¶ 14          Reid also testified that Neel had satisfied almost everything she had asked of him and all that remained were high conflict coparenting education classes. Reid and Neel had difficulties finding a class because the one Reid recommended only accepted both parents taking the class together. A psychological evaluation also remained uncompleted. Reid had no concerns regarding substance abuse. These recommendations had been given in June 2022 and had remained pending as of the time of the hearing in December 2023.

¶ 15          Neel testified that he could not be in his children's lives the way he wanted to be if relocation occurred and that his relationship with them would be adversely impacted. He did not believe Shana would help facilitate the relationship with him or his family if they moved. Regarding the evaluations he still had pending, Neel stated that he reached out to facilities as

soon as Reid requested them, but no facility would conduct the evaluation. Neel is a psychologist and stated that finding professional help that did not have a connection to him professionally was difficult. He had been seeing his psychiatrist since 2019 but was no longer seeing a therapist because he did not believe the one he was seeing was beneficial as her report resulted in a wellness check at his parents' home by three armed officers. He stated he was willing to do anything possible to reestablish his relationship with his children even though he had not received parenting time with the children since the time was suspended in June 2022. He testified that he did not send cards or gifts during the holidays because he stated he did not know if he was allowed to do so. He stated gifts were waiting for them at his house. He had not been in contact with Shana regarding the children.

¶ 16    Shana's parents and Neel's father also testified at the hearing.

¶ 17    In its oral ruling, the court made specific findings regarding each statutory factor and explained to the parties what evidence it considered when analyzing them. Of note, the court remarked that it considered the fact that Shana's reasons for wanting to relocate may have been more in her best interest, but the benefits Shana would receive if she relocated would also benefit the children. It would help the family financially, and the children would also benefit from having a familial support system in their maternal grandparents. It also did not dispute that it was important for children to have a relationship with both parents; however, it found Neel's objection was not credible as he had already gone a year and a half without seeing them. It also found that Neel had "substantially failed to exercise the parental responsibilities allocated to him under the parenting plan or allocation judgment." Specifically, Neel failed to take meaningful steps to continue with the therapy as recommended by his evaluation team, thereby preventing him from exercising supervised parenting time with his children. The court stated that Neel had

6

"a clear path" to follow regarding receiving therapy and that his decision not to follow it was "inconsistent with a father who wants to reestablish a relationship or wants to exercise parental responsibility under the parenting plan." Regarding the anticipated impact on the children if they moved away from their father, the court again noted that Neel had not had a relationship with them in over a year, thus the move would have little impact on the children's day-to-day lives. However, if Neel were to follow the recommendations of his evaluation team so that he could regain the ability to exercise parenting time, the court believed it could create a reasonable allocation of parenting time.

¶ 18      The court ultimately found that, when considering all the factors, relocation to North Carolina was in the children's best interests and granted Shana's petition. A written order was later entered permitting relocation. Neel now appeals.

¶ 19                                    II. ANALYSIS

¶ 20      We must first point out that the petition on review is a relocation petition and not a petition to modify parenting time or responsibilities. There is no pending challenge to the allocation of parenting time or responsibility. As such, the current allocation order affords Neel parenting time or responsibility that is not currently exercised because of Neel's failure to meet conditions.

¶ 21      Any parent with majority or equal parenting time may seek to relocate with the minor children. 750 ILCS 5/609.2(b) (West 2022). If the other parent objects to the proposed relocation, the parent wishing to relocate must file a petition with the court seeking permission to move. *Id.* § 609.2(f). When determining whether to grant the petition, the court must consider section 609.2(g) of the Act, which enumerates the following factors that must be weighed for or against relocation: (1) the circumstances and reason for the relocation; (2) the reasons the

opposing parent is objecting to the relocation; (3) the history and quality of each parent's relationship with the children and whether either parent has substantially failed or refused to exercise parenting time or responsibilities under the parenting plan or allocation judgment; (4) the educational opportunities for the children at the current and proposed locations; (5) the presence or absence of extended family at either location; (6) the anticipated impact of the relocation on the children; (7) whether the court will be able to fashion a reasonable allocation of parenting responsibilities for each parent if relocation occurs; (8) the wishes of the children, based on their maturity and ability to express any preferences; (9) possible arrangements for the exercise of parental responsibilities appropriate to the parental resources, circumstances, and the children's developmental levels; (10) minimization of impairment to any parental relationship caused by the relocation; and (11) any other relevant factors bearing on the children's best interests. *Id.* § 609.2(g).

¶ 22        In determining whether to grant the petition for relocation, a court must base its decision on the best interests of the children. *In re Marriage of Fatkin*, 2019 IL 123602, ¶ 32. In addition, the parent seeking relocation must establish by a preponderance of the evidence that the relocation is in the children's best interest. *In re Marriage of Tedrick*, 2015 IL App (4th) 140773, ¶ 49. When deciding whether relocation is appropriate, the circuit court should hear "any and all relevant evidence." *In re Marriage of Eckert*, 119 Ill. 2d 316, 326 (1988).

¶ 23        A reviewing court does not reweigh the competing considerations. *In re P.D.*, 2017 IL App (2d) 170355, ¶ 19. Accordingly, we will not reverse the circuit court's determination of what is in the best interests of a child unless that decision is against the manifest weight of the evidence and it appears that a "manifest injustice" occurred. *Eckert*, 119 Ill. 2d at 328. A court's decision is against the manifest weight of the evidence only where the opposite conclusion is

8

clearly apparent or where its findings are unreasonable, arbitrary, or not based on the evidence presented. *Best v. Best*, 223 Ill. 2d 342, 350 (2006). It is well established that "[t]he presumption in favor of the result reached by the trial court is always strong and compelling in this type of case." *Gallagher v. Gallagher*, 60 Ill. App. 3d 26, 31-32 (1978). Such deference is appropriate because the trier of fact has significant opportunity to observe the parents and children and is able to assess and evaluate the individuals. *Id.*

¶ 24        Relocation determinations also " 'cannot be reduced to a simple bright-line test.' " *Fatkin*, 2019 IL 123602, ¶ 32 (quoting *Eckert*, 119 Ill. 2d at 326). Thus, as the unique facts of each relocation case controls, comparison to other relocation cases may be of little value to our analysis. *Kimberly R. v. George S.*, 2021 IL App (1st) 201405, ¶ 74. Additionally, because of the unique analysis required here, the result cannot be reduced to a "tally" of which party "won" each factor and whether more factors benefited one party or the other. *In re Marriage of Levites*, 2021 IL App (2d) 200552, ¶ 71. "[B]ecause some factors in a particular case may weigh more heavily than others, the trial court must consider all factors and evidence touching on the issue and must arrive at a reasonable result." *Id.*

¶ 25        Neel raises various reasons why, in his opinion, the court's order denying relocation is against the manifest weight of the evidence. Out of the eleven statutory factors the court must consider, Neel argues that the circuit court improperly weighed all but two. We will review each of these factors in turn.

¶ 26                        A. Reasons and Circumstances for the Desired Relocation

¶ 27        With respect to factor 1, the circumstances and reasons for relocation, the court noted that Shana's reasons for relocation were to help her financial situation, gain familial support, and potentially expand her employment base. The court observed that, while these reasons are more

9

for Shana's benefit, they would also benefit the children, thus it found that this factor weighed in favor of relocation.

¶ 28       We recognize Neel's view that Shana's reasons for moving are not out of necessity. On appeal Neel continues to argue that Shana does not need to move but provides no authority to support his argument that she must show necessity before relocation is granted. Indeed, there is no requirement for Shana to demonstrate a need to relocate, nor must a court only weigh this factor in the moving party's favor if the desire to move is out of necessity. See 750 ILCS 5/609.2(g) (West 2022) (outlining the factors that the court must consider but does not impose a requirement that any one factor must be present before relocation is granted). The requirement of this factor is to consider Shana's reasons for wishing to relocate and whether those reasons favor or disfavor the children's relocation. *Id.*

¶ 29       The court considered all of Shana's reasons for relocating and found that this factor weighed in favor of relocation because the benefits Shana would receive as a result of the move would also benefit the children. Its reasoning is neither unreasonable nor against the manifest weight of the evidence. See *Fatkin*, 2019 IL 123602, ¶ 32.

¶ 30                          B. Reasons Neel Objects to the Relocation

¶ 31       Neel appears to challenge the court's reasoning for its decision regarding factor 2, the reasons for objecting to the move, but does not argue how the court's reasoning was incorrect. He merely argues that he is justified in his objection to the relocation and offers no reason why the court's analysis is against the manifest weight of the evidence.

¶ 32       Neel asks this court to reweigh this factor because he has said "all that needs to be said" to justify his objection. However, this court may not reweigh the factors against relocation; we must only determine whether the circuit court's decision was manifestly erroneous. See *In re*

10

*P.D.*, 2017 IL App (2d) 170355, ¶ 19. Neel has not provided evidence or argument that suggests that the circuit court erred in its decision. In fact, the court provided extensive reasoning as to why it did not believe Neel's objection was credible, and Neel does nothing to rebut or argue against this. Based on the record before us, we do not find that the court's decision regarding this factor was against the manifest weight of the evidence and thus find the court's analysis reasonable.

¶ 33                          C. The History and Quality of Relationships

¶ 34          Next, Neel challenges factor 3, history and quality of each parent's relationship with the children, and specifically, whether a parent has substantially failed or refused to exercise parental responsibilities allocated to him. Neel claims the court weighed this factor incorrectly because the court "misses the point" when considering this factor. He argues that the court erred because it found that Neel failed to exercise the parental responsibility allocated to him when none were allocated at the time. Decision-making responsibilities rested solely on Shana, and Neel's parenting time was suspended, thus he argues that the court did not weigh this factor properly to reflect this.

¶ 35          The court, in making its decision regarding this factor, pointed out that Neel had the ability to exercise supervised parenting time and failed to exercise it. All Neel had to do was to follow the recommendations of his team in order to regain supervised parenting time. The court explained that Neel's testimony regarding why he was not currently seeing a therapist was not credible, given the passage of time without a therapist when he has the resources available to him to find another. Further, to address Neel's argument that there was no allocation of responsibilities granted to him, the court found that Neel had the ability to change it and failed to do so. The court also noted that he had not seen his children in over a year due to his inability to

11

attend therapy and complete parenting classes. This, the court stated, weighed in favor of relocation because Neel essentially had no relationship at this time and had failed to exercise his parental responsibilities allocated to him because he was not taking the steps necessary to do so. Based on the record before us and the court's explanation, we find no manifest error in the court's decision that this factor weighed in favor of relocation. See *Fatkin*, 2019 IL 123602, ¶ 32.

¶ 36                                   D. Extended Family

¶ 37       With respect to factor 5, the presence or absence of extended family at each location, Neel offers no argument for how the court improperly weighed this factor in favor of relocation and instead lists the family and friends available to the children in Illinois. As previously stated, this court will not reweigh any factor for Neel, and instead will only determine whether the circuit court's decision as to this factor was manifestly erroneous. See *supra* ¶ 31; *In re P.D.*, 2017 IL App (2d) 170355, ¶ 19.

¶ 38       Upon review of the record, we find that the court's reasoning regarding this factor was not against the manifest weight of the evidence. It noted that Neel's parents were nearby in Illinois but, like Neel, did not have much of a relationship with the children at this time. It further noted that the children had a strong relationship with Shana's parents, who lived in North Carolina, because they frequently visited Illinois to see Shana and the children. This relationship, the court found, provided a strong benefit to the children if relocation occurred. Accordingly, we cannot say that this evidence clearly calls for the opposite result or that the court's decision regarding this factor was indisputably erroneous. See *In re P.D.*, 2017 IL App (2d) 170355, ¶ 18.

¶ 39                          E. Impact of Relocation on the Children

¶ 40       Again, Neel does not provide any argument that the court erred regarding factor 6, the anticipated impact of the relocation on the children, and instead attempts to reargue his position

12

from the circuit court. We reiterate that we will not reweigh the factors and further find that the circuit court's explanation regarding this factor was reasonable and not manifestly erroneous. See *supra* ¶¶ 31, 36; *In re P.D.*, 2017 IL App (2d) 170355, ¶ 19.

¶ 41                                      F. Allocation of and Arrangements for Parent Responsibilities

¶ 42          Regarding factor 7, whether the court could fashion a reasonable allocation of parenting responsibilities if relocation occurs, Neel argues that the court erred in finding that the prior allocation agreement had any relevance to this finding. This, however, is a mischaracterization of the court's analysis. The court explained in its evaluation of this factor that it found it difficult to analyze because no parenting responsibilities were currently being exercised by Neel. However, it found that it would be able to fashion a reasonable allocation if the relocation were to occur. It did not state that the current allocation plan would continue if relocation occurred and did not state that parenting time would remain the same as planned in that judgment. The court referenced the modified allocation order only to state that Neel must follow the recommendations of his evaluation team before he could regain parenting time with his children, and that if Neel could do this the court could fashion an allocation judgment that would be reasonable if the children moved to North Carolina. The court's analysis of the situation here was fair and reasonable, and we find no error in its determination.

¶ 43          Neel makes the same argument regarding factor 9, the arrangements for the exercise of parental responsibilities. For the reasons already explained above, we again do not find error in the court's reasoning as it relates to this factor.

¶ 44                                      G. Minimization of Impairment to a Parent's Relationship

¶ 45          Finally, we come to factor 10, the minimization of the impairment to a parent's relationship with the children caused by relocation. Neel argues the court improperly relied on

13

the GAL's finding that he did not know what relationship Neel had with his children. He contends that the court is not to consider the current relationship he has with the children, but rather how a move could impact that relationship. However, as the GAL and the court stated, they believed there would be little to no real impact on the children because of the current relationship they had with their father. The court reasoned that, because the children did not currently see their father while living in Illinois, there would be no effect in a change in relocation. The record does not support that the court made any error in this determination. We find no manifest error in its conclusion.

¶ 46    In sum, Neel has essentially asked this court to reweigh every statutory factor that the circuit court determined favored relocation. As we have repeatedly acknowledged, this court may not reweigh any factor and must only determine whether the circuit court's decision was unreasonable or if the opposite conclusion is clearly warranted. See *In re P.D.*, 2017 IL App (2d) 170355, ¶ 19. While Neel may not agree with the court's findings, he has presented us with no evidence that indicates that the court's findings were clearly erroneous or that a manifest injustice has occurred in this case. On the contrary, we find the court's decision to be well-reasoned and thoughtfully explained.

¶ 47    We therefore conclude that the circuit court considered all statutory factors and weighed them appropriately. Its ultimate determination to allow relocation is adequately supported by the record. The circuit court conducted a thorough analysis of the cause before it and provided the parties with a sufficient explanation of its reasoning, in accordance with the requirements of the statute. Therefore, we will not disturb its findings.[1]

_____

[1] This cause was brought pursuant to Illinois Supreme Court Rule 311(a) (eff. July 1, 2018), which provides a deadline for an appellate court's decision within 150 days after the filing of a notice of appeal, except for good cause shown. Due to the initial withdrawal of appellant's counsel and the time

14

¶ 48                                    III. CONCLUSION

¶ 49          The judgment of the circuit court of Du Page County is affirmed.

¶ 50          Affirmed.

---

needed to retain new counsel, as well as a motion to supplement to provide a complete record on appeal, a delay in these proceedings occurred. Given that this delay resulted in a delay in appellee's response and appellant's reply briefs, we find good cause exists to extend the time for this decision.